**SOUTHERN MONORAIL COMPANY,**
Plaintiff-Appellee,

v.

**ROBBINS & MYERS, INC.,**
Defendant-Appellant.

No. 81–7244.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Jan. 22, 1982.

Kilpatrick & Cody, Jerre B. Swann, Atlanta, Ga., for defendant-appellant.

Chambers, Chambers & Chambers, John W. Chambers, Jr., Atlanta, Ga., for plaintiff-appellee.

Before MORGAN, KRAVITCH and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Plaintiff-appellee Southern Monorail Company ("Southern Monorail") sued defendant-appellant Robbins & Myers, Inc. ("Robbins & Myers") and defendant The Barton Company, Inc. ("The Barton Company"), alleging federal antitrust violations and related state claims. In its answer, Robbins & Myers counterclaimed against Southern Monorail for trademark/trade name infringement, unfair competition, unfair and deceptive trade practices, and money due on open account, under the Lanham Act, 15 U.S.C.A. § 1125(a) (West 1974) and under state statutory and common law. Robbins & Myers alleged that after it ter-

* Former Fifth Circuit case, Section 9(1) of Public     Law 96–452—October 14, 1980.

minated Southern Monorail's distributorship, Southern Monorail unlawfully continued to advertise itself in the Atlanta Yellow Pages as an authorized representative for Twin City products,[1] thus improperly inducing potential Twin City customers to deal with Southern Monorail instead. Robbins & Myers moved for a preliminary injunction against Southern Monorail requiring the placement of an "intercept" on Southern Monorail's telephone number. An independent answering service would respond to calls made to that number, inquire whether the caller wished to speak with Southern Monorail or with Twin City, and then would provide the caller with the appropriate number. Concluding that Southern Monorail would suffer far more harm from the intercept than Robbins & Myers would endure without the intercept, the district court denied the preliminary injunction. We affirm.

The sole issue in this interlocutory appeal is whether the district court properly denied Robbins & Myers' motion for a preliminary injunction requiring an intercept on Southern Monorail's telephone number.[2]

■ The four prerequisites for the issuance of a preliminary injunction are (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the opponent; and (4) that granting the preliminary injunction will not disserve the public interest. The district court's grant or denial of a preliminary injunction is reviewable only for abuse of discretion. *See, e.g., Middleton-Keirn v. Stone*, 655 F.2d 609, 610–11 (5th Cir. 1981); *Foley v. Alabama State Bar*, 648 F.2d 355, 358 (5th Cir. 1981); *Clements Wire & Manufacturing Co. v. NLRB*, 589 F.2d 894, 897 (5th Cir. 1979). Here, the district court

denied the injunction solely on the basis of the third factor, concerning the balance of harm. A preliminary injunction may not issue unless the movant carries the burden of persuasion as to all four prerequisites. *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 114 (5th Cir. 1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980). Thus, because we uphold the district court's ruling on the balance of harm question, we need not address the parties' contentions concerning the other three factors.

We agree with the district court that the threatened injury to Robbins & Myers from the telephone directory advertisement does not outweigh the harm that Southern Monorail would suffer from an intercept on its telephone number. As the district court found, the only advertised association between Twin City and Southern Monorail appears in the current Atlanta Yellow Pages. Robbins & Myers has made no showing as to how much of its geographic market area for Twin City products is potentially affected by the advertisement. However, we note that Robbins & Myers' Twin City products are sold throughout the United States and Canada, not just in Georgia. (R–102). Consequently, any confusion caused by the allegedly improper advertisement appears restricted to a relatively small portion of the geographic market area for Twin City products, *i.e.*, Robbins & Myers' Georgia business. In addition, Robbins & Myers has made little showing of actual harm. At the hearing on the preliminary injunction, counsel for Robbins & Myers stated that "[W]e will stipulate that we are not offering evidence of actual confusion." (T–47) Southern Monorail's president testified that Southern Monorail accounted for only 4–5% of the total sales of Twin City products in 1979 in the United States and Canada. Robbins & Myers produced no evidence indicating that Southern

1. Twin City is the alleged trade name of certain Robbins & Myers products.

2. In the district court, Robbins & Myers' motion for a preliminary injunction sought not only the telephone intercept, but also other

relief. The parties reached agreement with respect to relief other than the intercept, and accordingly only the intercept was at issue at the time of the district court's judgment. Similarly, only the intercept is at issue on appeal.

Monorail presently accounts for any greater proportion of the total business in Twin City products. In sum, the degree of harm to Robbins & Myers' business in Twin City products caused by the advertisement does not seem particularly great, especially when the restricted geographic (Georgia) and sales (4–5%) impact of the challenged advertisement is compared to the harm that Southern Monorail would suffer from the intercept.

Apart from Twin City, Southern Monorail represents four other companies: Kone, Mayfram, Ductoware, and American Monorail. Southern Monorail's president testified that in 1980, Twin City products accounted for only 20% of Southern Monorail's profit. (T–137) The other 80% derived from the sales of other represented companies' products and from Southern Monorail's parts and service business.[3] A telephone intercept would single out one represented company for special treatment. Southern Monorail argues that this singling-out would create the impression in a potential customer's mind that something improper is afoot at Southern Monorail, thus affecting Southern Monorail's other legitimate business. The district court apparently agreed with this contention, and we perceive no reason to disturb this finding.

Moreover, because Southern Monorail advertises nationally and receives phone calls from all over the country in connection with its business, potential customers who are unlikely to have seen the Atlanta Yellow Pages would encounter the suspicious intercept. For example, Southern Monorail split with Kone the $60,000 cost for an advertisement, not mentioning Twin City, in the Thomas Register, a national publication to which major United States users of crane and hoist equipment subscribe. In addition, Southern Monorail demonstrated that it places much value in the telephone number itself. Because the number is located in Southern Monorail's former exchange area, Southern Monorail must pay an extra charge to continue using it.

Robbins & Myers evidently perceives the difficulties raised by its failure to demonstrate actual harm, because it seems to argue that the balance of harm factor is presumed in favor of a party seeking a preliminary injunction in a trademark/trade name infringement case when that party has established a substantial likelihood of success on the merits of the infringement claim. Robbins & Myers does clearly assert that the irreparable injury factor is presumed in favor of such a party, as a matter of law and without further showing, from the likely consumer confusion necessarily established by the movant's showing of a substantial likelihood of success on the infringement claim. We note that at least five cases in the district courts of this circuit seem to have adopted this presumption of irreparable injury. *See, e.g., Scientific Applications, Inc. v. Energy Conservation Corporation of America*, 436 F.Supp. 354, 361–62 (N.D.Ga.1977) (quoting *Carling Brewing Co. v. Philip Morris, Inc.*, 277 F.Supp. 326, 335 (N.D.Ga.1967)); *Teledyne Industries, Inc. v. Windmere Products, Inc.*, 433 F.Supp. 710, 740 (S.D.Fla.1977); *Counsel of Better Business Bureaus, Inc. v. Better Business Bureau of South Florida, Inc.*, 200 USPQ 282, 299 (S.D.Fla.1978); *Rubber Specialty, Inc. v. Sneaker Circus, Inc.*, 195 USPQ 798, 802 (S.D.Fla.1977). However, we also note that no party has cited, nor have we been able to find, any case in this court expressly adopting this presumption of irreparable injury. Because we dispose of this case on the balance of harm ques-

3. At the preliminary injunction hearing, Robbins & Myers argued that Southern Monorail's parts and service business, which consists of the maintenance and repair of previously installed overhead materials handling systems, also includes the sale of Twin City replacement parts. However, the record contains no evidence of the degree of the sales of Twin City parts in Southern Monorail's parts and service business. Thus, we cannot evaluate how much of Southern Monorail's 80% profit derives from Twin City products, but must rely on the 20% figure specified at the hearing.

tion, we need not decide and we express no views upon whether a presumption of irreparable injury as a matter of law is appropriate once a party demonstrates a substantial likelihood of success on the merits of an infringement claim. In other words, even assuming *arguendo* that Robbins & Myers has shown a substantial likelihood of success on the merits of its infringement claim and that irreparable injury should be presumed from such a showing (two issues not addressed by the district court in this case), we still uphold the district court's decision, which rested solely on the balance of harm factor. We agree that Robbins & Myers has failed to carry its burden of showing that the threatened harm to it from the advertisement outweighs the harm to Southern Monorail from the intercept. In addition, we expressly reject Robbins & Myers' suggestion that we adopt a rule that the balance of harm factor should be presumed in the movant's favor from a demonstration of a substantial likelihood of success on the merits of an infringement claim. Such a presumption of the balance of harm factor would not comport with the discretionary and equitable nature of the preliminary injunction in general and of the balance of harm factor in particular. *See Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980) (district court obligated to weigh relative hardship to parties in relation to decision to grant or deny preliminary injunction, even when irreparable injury shown).

Robbins & Myers further argues that Southern Monorail's failure to withdraw the directory advertisement, after Robbins & Myers terminated Southern Monorail's distributorship with a letter expressly requesting discontinuance of directory advertising, demonstrates "willful" infringement such that Southern Monorail's asserted harm is irrelevant to the balance of harm issue. Apparently, after Southern Monorail received Robbins & Myers' letter, Southern Monorail had plenty of time to withdraw the challenged advertisement, and even affirmatively told the telephone company to print the item. In considering the balance of harm in an infringement case, one district court in this circuit (the only case in this circuit that Robbins & Myers cites) does seem to have discounted the harm claimed by the party opposing the preliminary injunction because the infringing party was "fully aware of the [movant's] product when it decided to market a confusingly similar version." *Teledyne Industries, Inc. v. Windmere Products, Inc.*, 433 F.Supp. 710, 741 (S.D.Fla.1977) (infringing party can scarcely complain of harm befalling it on account of decision to infringe). We need not reach this issue and express no views upon it because the district court here apparently found that Southern Monorail erroneously, but innocently, believed at all times that it was too late to withdraw the advertisement. Our review of the record does not persuade us otherwise.

For the reasons discussed above, we hold that the district court did not abuse its discretion in denying the preliminary injunction.[4]

AFFIRMED.

---

4. We note that our holding is based upon the specific relief requested by Robbins & Myers in this case, *i.e.*, the interception of all calls to Southern Monorail. Of course, our holding does not preclude Robbins & Myers from requesting other injunctive relief, such as a requirement that Southern Monorail provide Twin City's telephone number to any caller who specifically requests information concerning Twin City products.