APPLE BARREL PRODUCTIONS, INC.,
A Texas Corporation, and Betty Sue
Faglie Combs, Plaintiffs-Appellants,

v.

R.D. BEARD, Shirley Beard, Don Hagins,
Pat Hagins, Sharon Henson, Beverly
Dishroon, Arnold Robinson and Kay
Jackson, Defendants-Appellees.

No. 83–1354.

United States Court of Appeals,
Fifth Circuit.

April 23, 1984.

Bickel & Brewer, William A. Brewer, III, John W. Bickel, Dallas, Tex., for plaintiffs-appellants.

Donald T. Fulton, Fort Worth, Tex., for all defendants-appellees except Suttle.

Before BROWN, GEE and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

This is an appeal from the denial of plaintiff's motion for a preliminary injunction in a case alleging copyright infringement and misappropriation of intellectual property. Although we reach our conclusion by a different route, we conclude that the court did not abuse its discretion in refusing to grant the preliminary injunction.

## FACTS

This case pits against each other two country music programs, both of which feature children performers. The first, "The Country Kids Show," was developed in 1981 by plaintiff, Betty Sue Faglie Combs.[1] Combs auditioned talent for the show on October 23, 1982, and selected 28 children to perform in the show. Children of the various defendant parents were among those selected.

From November, 1982, through January 8, 1983, the show was rehearsed weekly for a total of more than twenty times. Three live performances of the show were staged. A filming of the televised version of the show was scheduled for January 22, 1983. Prior to the filming, however, a conflict developed between the defendant parents group and Ms. Combs. The defendants subsequently withdrew their children from "The Country Kids Show" cast. At this point, the defendants formed a new group

---

1. Defendants contend that Ms. Combs did not create "The Country Kids Show" alone but that one of the defendants, Ms. Sharon Henson helped formulate the show.

and began performing a country music show featuring their children under the new name of "Kids 'n Country."

On March 28, 1983, Combs and Apple Barrel Productions, Inc., the assignee of Combs' rights in the concept and in the script, filed a complaint and a motion for a preliminary injunction, claiming that the "Kids 'n Country" show was almost identical to "The Country Kids Show." Plaintiffs alleged copyright infringement, false designation of origin, trademark infringement, and disparagement and unfair competition. Plaintiffs requested that the defendants be enjoined from infringing plaintiffs' copyright, from using the name "Kids 'n Country" or any similar words in producing a children's country music show or in connection with the marketing of any items for sale, from disparaging plaintiffs or "The Country Kids Show," and from picketing plaintiffs' auditions. Plaintiffs also requested $250,000 in damages and an accounting for all profits derived by virtue of the allegedly illegal acts.

Evidentiary hearings on the preliminary injunction motion were held on April 15 and 18, 1983. At the hearings, plaintiffs presented evidence only on the copyright infringement claim and on an additional claim, misappropriation of intellectual property. The district court denied the preliminary injunction,[2] and plaintiffs appeal.

## I. PRELIMINARY INJUNCTION

This appeal questions solely the propriety of the denial of the preliminary injunction by the district court. In order to secure a preliminary injunction, the movant has the burden of proving four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not issued; (3) that threatened injury to the movant outweighs any damage the injunction might cause to the opponent; and (4) that the injunction will not disserve the public interest. *Dallas Cowboy Cheerleaders v. Scoreboard Posters, Inc.,* 600 F.2d 1184, 1187 (5th Cir.1979).

2. The case has not yet been tried on the merits.

The decision to grant or deny a preliminary injunction lies within the discretion of the district court and may be reversed on appeal only by a showing of abuse of discretion. *City of Meridian, Mississippi v. Algernon Blair, Inc.,* 721 F.2d 525, 527 (5th Cir.1983). The four prerequisites for preliminary injunctive relief are mixed questions of fact and law. In reviewing the actions of the district court for abuse of discretion, we uphold the district court's findings of fact unless clearly erroneous. Fed.R.Civ.P. 52(a). The court's conclusions of law, however, "are subject to broad review and will be reversed if incorrect." *Commonwealth Life Insurance Co. v. Neal,* 669 F.2d 300, 304 (5th Cir.1982).

In the present case, the district court denied the plaintiffs' motion for a preliminary injunction solely on the basis of its conclusion that plaintiffs had not established a substantial likelihood of success on the merits, the first requirement of the four prong test. Plaintiffs contend that in making this conclusion, the district court abused its discretion for two significant reasons: (1) the court improperly analyzed plaintiffs' copyright infringement claim; (2) the court failed to analyze plaintiffs' claim of misappropriation of intellectual property or at least utilized an incorrect legal standard in this analysis.

## II. COPYRIGHT INFRINGEMENT

### 1. *The Issue of Standing*

We note preliminarily that plaintiffs in this case had standing to maintain a copyright infringement action, despite the fact that they had not received a certificate of copyright registration from the Copyright Office by the time of the preliminary injunction hearing. In order to bring suit for copyright infringement, it is not necessary to prove possession of a registration certificate. One need only prove payment of the required fee, deposit of the work in question, and receipt by the Copyright Of-

fice of a registration application. *2 Nimmer on Copyright* § 7.16[B][1]. Plaintiffs introduced evidence at the district court hearing which established that these prerequisites had been satisfied. Thus, if proper, the district court could have granted preliminary injunctive relief for violation of copyright. Further, the propriety of the district court's decision against the injunction is not affected by the fact that since the hearing plaintiffs have received a registration certificate.

### 2. Scope of Copyright Interest

■ Copyright infringement is shown by proof of "ownership" of copyrighted material by plaintiff and proof of "copying" by the defendant. *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1375 (5th Cir. 1981). "Ownership" of copyrighted material in turn, is shown by proof of originality, copyrightability, and compliance with applicable statutory formalities.[3]

Plaintiffs claimed copyright ownership with respect to their original expression of the idea of a country music show performed by children. In their application for copyright registration, the plaintiffs presented various aspects of the series: the characters involved in the show, the sets, the costumes, a sample script, and a selection of songs to be performed by the children. The plaintiffs did not request a copyright over the individual component parts of the show, but instead, applied for a copyright with respect to the combination of the components—the production as a whole. Similarly, plaintiffs did not claim copyright infringement with respect to the individual songs[4] or dances performed in "The Country Kids Show," but only in-fringement of their manner of presentation of the songs and dances.

Despite the fact that plaintiffs only alleged copyright protection over its show as a whole, the district court did not view the show as a separate entity. Instead, the court divided "The Country Kids Show" into three distinct areas—script, design, and format—and questioned whether those components were original and/or copyrightable. The court made fact findings, for example, that the dialogue was not the same as that used in defendants' show, the songs performed in plaintiffs' show were not original, and the design elements of the show (costumes, hay bales, American flags) were not copyrightable because they presented "nothing new". Once the court determined that the components of "The Country Kids Show" were not original creations of the plaintiffs, or copyrightable by the plaintiffs, it concluded that the show itself could not be the subject of copyright protection, either.

■ Plaintiffs contend that this dissected form of analysis was incorrect, and we agree. Despite the fact that the songs and dances performed in "The Country Kids Show" were not original compositions, copyright protection was still possible with respect to the show itself. Plaintiffs' show could be found to be a "compilation," "a work formed by the collection and assembling of preexisting materials ... selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Copyright protection may extend to such a compilation,[5] even if the material of which it is composed is not copyrightable itself or is already subject to a previous

---

3. "Copying" is shown by proof of access to the copyrighted material and substantial similarity between the two works. *Miller v. Universal Studios, Inc.,* 650 F.2d 1365, 1375 (5th Cir.1981). The question of "copying" was not reached by the district court. Nor do we reach that issue.

4. Indeed, it would have been absurd for plaintiffs to suggest that they could have secured a copyright over such popular country and western tunes as *Elvira, Momma Don't Allow,* or *Orange Blossom Special.*

5. Section 103(b) of the Federal Copyright Act, 17 U.S.C. § 103(b), provides that: "[t]he copyright in a compilation ... extends only to the material contributed by the author of such work, as distinguished from the preexisting material ... and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of ... any copyright protection in the preexisting material."

copyright.[6] *See, e.g., National Association of Broadcasters v. Copyright Royalty Tribunal,* 675 F.2d 367, 378 (D.C.Cir.1982) (selection and arrangement of various programs into "broadcast day" of television station constitutes copyrightable compilation that may be owned by station regardless of ownership of copyrights in individual programs); *Roy Export Company Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting System,* 672 F.2d 1095, 1103 (2d Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) (film composed of excerpts from previously copyrighted Charlie Chaplin films was copyrightable itself as original creative endeavor); *Baldwin Cooke Company v. Keith Clark, Inc.,* 383 F.Supp. 650, 654 (N.D.Ill.1974), *aff'd,* 505 F.2d 1250 (7th Cir. 1974) (per curiam) (Executive Planner, a combination calendar, appointment, diary and information book, was copyrightable even though component parts were within public domain and thus not individually copyrightable); *Affiliated Music Publishers, Inc. v. Ashley Publications, Inc.,* 197 F.Supp. 17, 18 (S.D.N.Y.1961) (piano book containing 142 musical selections concededly in public domain entitled to copyright protection since book as a whole was original work).

■ Just as with any song or dance submitted alone, a collection of non-copyrightable material may qualify for protection if original skill and labor is expended in creating the work. The mere fact that component parts of a collective work are neither original to the plaintiff nor copyrightable by the plaintiff does not preclude a determination that the combination of such component parts as a separate entity is both original and copyrightable. *1 Nimmer on Copyright* §§ 3.02, 3.03. Since the plaintiffs alleged copyright ownership with respect to the show as a whole, it was erroneous for the district court to base its decision as to the success of the infringement claim on the originality or copyrightability of the individual elements of the show. Instead, the court should have examined "The Country Kids Show" in its entirety, and made fact findings on the originality[7] and copyrightability[8] of the show as a package.

## III. MISAPPROPRIATION

Plaintiffs also contend that the district court erred by ignoring or at least misanalyzing the claims based on misappropriation of intellectual property. Although the misappropriation claim was implicitly rejected by the court's denial of injunctive relief, the court never specifically addressed the merits of this claim in its memorandum opinion.

■ In support of the district court opinion, defendants suggest that the reason the misappropriation claim was not mentioned by the court was because the plaintiffs did not include this claim in their pleadings. Regardless of its inclusion in the complaint,[9] however, a misappropriation theory was propounded by plaintiffs throughout the trial. At the preliminary injunction hearing, plaintiffs introduced testimony and submitted arguments in opening and

---

**6.** Compilations consisting of contributions which are themselves "works" capable of copyright protection are called "collective works". *See* 17 U.S.C. § 101.

**7.** Introduction of a copyright registration certificate from the Copyright Office constitutes prima facie proof of most of the elements of ownership. If the certificate is not available, however, plaintiffs may prove ownership by other evidence.

**8.** We do not express our own opinion as to whether plaintiffs' show was sufficiently original or copyrightable, as that question is properly suited for the trier of fact. We do note error, however, in the district court's reasoning that a work cannot be copyrightable if it presents "nothing new." Novelty is not required in a work in order for the work to be considered original or copyrightable. *Sid and Marty Krofft Television Productions, Inc. v. McDonald's Corporation,* 562 F.2d 1157, 1163 n. 5 (9th Cir.1977).

**9.** In Count II of its complaint, buried under the heading "False Designation of Origin," plaintiffs state that "Defendant's show wrongfully misappropriates both the ideas and formats used by Plaintiffs, and thus tends to falsely present their show as Plaintiff's show." This is the sole reference to misappropriation in the pleadings.

closing in support of a misappropriation theory. Further, plaintiffs specifically urged the court to order relief based on this theory in a memorandum in support of their request for a preliminary injunction, which was submitted prior to the hearing. Defendants failed to object or respond to these arguments. Even if not raised by the pleadings, once issues are presented and argued without objection by opposing counsel, such issues are tried by the implied consent of the parties and are treated as if they had been raised in the pleadings. Fed.R.Civ.P. 15(b).

■■■ Misappropriation of intellectual property was implicitly recognized as a claim for relief under Texas law by this Court in *Capital Films Corp. v. Charles Fries Productions*, 628 F.2d 387 (5th Cir. 1980). In that case, the district court granted the defendant a summary judgment based on its conclusion that two of the three requirements for misappropriation had not been established by the plaintiff. The three elements of misappropriation listed by the district court were (1) the idea is novel; (2) disclosure of the idea was made in confidence; and (3) the idea was adopted and made use of by the defendant. *Id.* at 394. On appeal, we remanded the case to the district court as we could not find as a matter of law that these factors were not shown by the plaintiff. Similarly, we cannot find as a matter of law that plaintiffs did not prove the existence of these three elements on the present facts. Without expressing any opinion as to the merits of the misappropriation claim we simply conclude that the claim was properly before the court, and should have been considered by the court as a possible ground for preliminary relief.

## IV. BALANCE OF HARM

Although we find error in the district court's analysis regarding plaintiffs' potential success on the merits of a copyright claim and possibly of a misappropriation claim, we nevertheless affirm the court's order denying the preliminary injunction. In order to obtain preliminary injunctive relief, the movant must carry the burden of persuasion on each of the elements of the four prong test. *Southern Monorail Company v. Robbins & Myers, Inc.*, 666 F.2d 185, 186 (5th Cir.1982). Thus, in this case, even if the district court erred in concluding that plaintiffs did not prove a substantial likelihood of success on the merits, unless plaintiffs introduced sufficient evidence at the hearing to establish the other three prerequisites to injunctive relief, the court's ruling against an injunction still must be affirmed.[10]

■■■ This is precisely the case on these facts. After reviewing the record, we conclude that the plaintiffs failed to satisfy the third requirement for a preliminary injunction; that is, that the threatened injury to the movant outweighs the threatened harm a preliminary injunction may cause the opponent.[11] Although plaintiffs successfully established that they would suffer irreparable damage if an injunction were not granted, in doing so, they simultaneously established that defendants would suffer irreparable harm of at least the same magnitude if an injunction *were* ordered.

Plaintiffs' argument regarding irreparable harm was based on a theory that the television market could support only one country and western musical show performed by children, due to the unique qual-

---

10. Although the district court denied the injunction solely on the likelihood of success question, on appeal this Court may properly consider other reasons for affirming the judgment of the court. *California Bankers Association v. Shultz*, 416 U.S. 21, 94 S.Ct. 1494, 1522, 39 L.Ed.2d 812 (1974).

11. Even assuming a showing by plaintiffs that they were more likely than not to prevail on the merits, the factor of balance of potential harm

is virtually equal under the sliding scale analysis set out in *State of Texas v. Seatrain Int'l S/A*, 518 F.2d 175, 180 (5th Cir.1975). While the sliding scale analysis recognizes an interdependence among the four factors, the requirement that all four factors must be considered does not allow the balance of harm factor to be significantly reduced on this record. *See Southern Monorail Co. v. Robbins & Myers, Inc.*, 666 F.2d 185, 188 (5th Cir.1982).

ity of such a program. To establish their market theory, plaintiffs introduced an expert, Mr. Tim Pugliese, a film and television producer and advertising executive. Pugliese stated that "the chance of two programs of this nature operating at the same time is probably very, very limited" and that "whoever hits the market first is going to have the whole bag; at least for the foreseeable future." He further testified that the legitimacy of the show that hit the market second would be severely hampered because the second show would "look like copycats" whether they copied the first show or whether the reverse was actually the case. Appellant Combs also testified that it would be "very tough" for a show that hit the market second to succeed on television. Plaintiffs' position is that if by some chance the defendants are able to produce and market "Kids 'n Country" before plaintiffs can market "The Country Kids Show," then plaintiffs will not be able to enter the television market at all because everyone will assume that as a latecomer, "The Country Kids Show" is a copy. Plaintiffs contend that ultimately, after a trial on the merits, a court will conclude that "Kids 'n Country" is actually the copy. With this in mind, plaintiffs argue that a preliminary injunction against defendants is necessary at this point so that defendants cannot take over the market during the time when the full trial is pending.

This is a valid point and clearly establishes the potential for harm to plaintiffs in the event that a preliminary injunction is not granted. What plaintiffs fail to establish by this argument, however, is how their potential harm could possibly exceed the threatened harm to the defendants in the case that an injunction is granted. And this, of course, is the test they must satisfy.

If a preliminary injunction is granted, the plaintiffs will have the market all to themselves until the conclusion of the trial on the merits. This affords plaintiffs an excellent opportunity to produce and market their show without any competition from defendants. Then, assuming that after a trial on the merits, contrary to plaintiffs'

speculation, a court determines that defendants actually did *not* infringe upon plaintiffs copyright, defendants will be the party without any remedy. Even if defendants succeed on the merits, they will be effectively shut out of the television market since everyone will assume that as a second entry into the market, "Kids 'n Country" is a copy. Just as plaintiffs may not succeed as a latecomer to the market, defendants similarly may not succeed in this position. Thus the harm to defendants is at least as great as the harm to plaintiffs. In fact, a preliminary injunction on these facts will almost certainly guarantee greater harm for the defendants than failure to enjoin will bring to the plaintiffs. If no injunction is ordered, at least each party is an equal competitor in the race to produce and market its show first. On the contrary, if an injunction *is* ordered, then defendants literally will be locked out of the television market until the conclusion of the trial on the merits, with *no* opportunity to win the race to market their program first.

Perhaps in realization of their failure to prove each element of the four prong test, plaintiffs argue that in a copyright infringement case, once a prima facie case of infringement is established, the other three prerequisites should be presumed in the movant's favor. This Court has not expressed a view on whether a presumption of irreparable injury (the second prong) as a matter of law is appropriate after a substantial likelihood of success on the merits is shown. *See Southern Monorail Co. v. Robbins & Myers, Inc., supra* at 188. Neither is it appropriate for us to express a view on this point now, as our decision against injunctive relief is not based on plaintiffs' failure to prove irreparable harm. We base our decision on failure to prove the third factor—balance of harm, and this Court in *Southern Monorail* has already expressly rejected the suggestion that the balance of harm factor should be presumed after a showing of substantial likelihood of success on the merits. As we stated then, "[s]uch a presumption of the

balance of harm factor would not comport with the discretionary and equitable nature of the preliminary injunction in general and of the balance of harm factor in particular." *Ibid.*

Since appellants failed to carry their burden of proving each prerequisite for preliminary injunctive relief, we affirm the order of the district court denying such relief.

AFFIRMED.