**ALLIED MARKETING GROUP, INC.,
d/b/a Sweepstakes Clearinghouse,
Plaintiff–Appellee,**

v.

**CDL MARKETING, INC., Carl D. Landon and S & H Marketing Group, Inc., Defendants–Appellants.**

No. 88–1747.

United States Court of Appeals,
Fifth Circuit.

July 13, 1989.

---

Bruce Longenecker, Dallas, Tex., for CDL & Landon.

Richard L. Schwartz, Glaser, Griggs & Schwartz, Dallas, Tex., for S & H.

P. Weston Musselman, William M. Parrish, Jenkins & Gilchrist, Dallas, Tex., for plaintiff-appellee.

Before WISDOM, KING and WILLIAMS, Circuit Judges.

KING, Circuit Judge:

S & H Marketing appeals from the order of the district court granting a preliminary injunction which precludes them from using promotional post card mailers which are "confusingly similar" to the copyrighted mailers of plaintiff Allied Marketing. For the reasons set forth below, we remand the case to the district court but leave the preliminary injunction in place on the condition that the district court issues a supplementary opinion explaining more fully its reasons for granting the preliminary injunction.

## I.

Plaintiff-appellee Allied Marketing Group, Inc. ("Allied") sued defendants-appellants CDL Marketing, Inc., Carl D. Landon, and S & H Marketing Group, Inc. (collectively "S & H") in the Federal District Court for the Northern District of Texas, alleging copyright infringement, unfair competition under the Lanham Act, common law unfair competition, and civil conspiracy.

Both Allied and S & H are engaged in mail order retail sales and have used postcard mailers to notify consumers that particular goods are available for purchase. Stevan Hammond, the president of Allied,

asserted that he conceived and developed the promotional postcard mailer at issue here and first used a similar mailer in 1985. On February 17, 1987, Allied registered its copyright in the postcard format. It began using the copyrighted version in January of 1987.

S & H, on the other hand, claims that it conceived the postcard format in February of 1987. S & H began mailing its postcards in June, 1987.

The allegedly infringing postcards mailed by S & H used a format which the district court found to be "virtually identical" to that used by Allied. Allied and S & H have both printed their cards on different colors of paper.

Allied requested and was granted a preliminary injunction prohibiting S & H from using the allegedly infringing postcard mailer. The district court issued a memorandum opinion and order granting the preliminary injunction on July 11, 1988. The preliminary injunction was issued on July 15, 1988, to remain in effect until plaintiff's application for a permanent injunction could be heard by the court. S & H subsequently moved to "alter, amend, and/or supplement" the preliminary injunction pursuant to Rules 52 and 59 and to stay the injunction pending appeal pursuant to Rule 62. In its motion, S & H argued that the district court had failed to address the validity of Allied's copyright or the protectability of its trade dress and asked the court to clarify the grounds of its memorandum opinion of July 11, 1988. On September 21, 1988, the district court amended the preliminary injunction to clarify the scope of prohibited activity, but declined to alter its memorandum opinion. The district court also refused to stay the injunction pending appeal. S & H timely filed a notice of appeal from the original and amended orders.

## II.

A preliminary injunction may be granted only if the moving party establishes each of the following four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest. *Blue Bell Bio–Medical v. Cin–Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir.1989); *Mississippi Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir.1985); *Dallas Cowboys Cheerleaders v. Scoreboard Posters*, 600 F.2d 1184, 1187 (5th Cir.1979). A preliminary injunction is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors. *Mississippi Power & Light*, 760 F.2d at 621; *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 389 (5th Cir.1984).

The decision whether to grant a preliminary injunction is within the discretion of the district court. Accordingly, we may reverse the district court's decision only if it constitutes an abuse of discretion. *Blue Bell Bio–Medical*, 864 F.2d at 1256; *Mississippi Power & Light*, 760 F.2d at 621. In reviewing the district court's decision for abuse of discretion, we will not disturb its findings of fact unless they are clearly erroneous. *Blue Bell Bio–Medical*, 864 F.2d at 1256; *Apple Barrel Productions*, 730 F.2d at 386. The district court's determinations will not, however, be entitled to the deferential standard of review provided by Rule 52(a) if the trial court has not properly applied the governing legal standards. *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336, 344 (5th Cir.1984); *Chevron Chemical Co. v. Voluntary Purchasing Groups*, 659 F.2d 695, 703 (5th Cir.1981), *cert. denied*, 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982).

In the instant case, the district court properly applied the four-pronged test for determining whether a preliminary injunction is appropriate. S & H contends, however, that the district court committed a number of legal errors in reaching its conclusions under each of the factors. In particular, S & H maintains that the district

court erred in holding that there was a substantial likelihood that Allied would prevail on its copyright and unfair competition claims.[1] S & H has asserted a number of defenses to Allied's claims which could preclude Allied from prevailing on the merits. The district court's memorandum opinion fails, however, to discuss most of these contentions.

Rule 52(a) requires that in granting or refusing a preliminary injunction, the district court must "set forth the findings of fact and conclusions of law which constitute the grounds of its action." Fed.R.Civ. P. 52(a); *Commerce Park at DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334, 342 (5th Cir.1984); *Inverness Corp. v. Whitehall Laboratories*, 819 F.2d 48, 50 (2d Cir.1987). This requirement is intended in part to ensure that the district court explains its reasoning with sufficient particularity to provide a basis for appellate review.

While the district court in this case did set forth findings of fact and conclusions of law, its failure to address the defenses asserted by S & H impedes our ability to determine whether the district court erred in its decision to grant the preliminary injunction.

## A. Copyright Infringement Claim

 Allied's first claim is that S & H infringed Allied's copyright in the format of its postcard mailers. To establish the infringement of a copyright, the plaintiff must prove "ownership" of the copyrighted material and "copying" by the defendant. *Apple Barrel Productions*, 730 F.2d at 387; *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir.1978). "Ownership" is established by proving the

---

1. S & H also claims that the district court erred in concluding that each of the three remaining factors militated in favor of a preliminary injunction. First, S & H notes that the central inquiry in deciding whether there is a substantial threat of irreparable harm to the plaintiff is whether the plaintiff's injury could be compensated by money damages, *City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983). S & H maintains that Allied has not demonstrated that its injury could not be compensated by monetary damages. The district court found, however, that the damage to the goodwill of Allied's customers—as a result of confusion between Allied's mailers and those of S & H—might be incapable of calculation. We have recognized that a finding of irreparable harm is appropriate even where economic rights are involved when the nature of those rights makes "establishment of the dollar value of the loss ... especially difficult or speculative." *Mississippi Power & Light*, 760 F.2d at 630 n. 12 (citing *State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir.1975)). We therefore reject S & H's contention that the district court erred in finding that there was a substantial threat that Allied would suffer irreparable harm if the preliminary injunction was not granted.

S & H also claims that it will suffer greater harm as a result of the granting of the preliminary injunction than Allied would suffer as a result of a denial of the injunction. While S & H is correct that a showing of substantial likelihood of success on the merits does not create a presumption that harm to the plaintiff outweighs harm to the defendant, *Apple Barrel Productions*, 730 F.2d at 390, the district court did not apply such a presumption. Rather, the district court concluded that the potential damage to Allied's goodwill outweighed any harm to S & H because S & H was free to use any number of alternative methods to promote its products. This case is very different from *Apple Barrel* in which we found that the substantial threat of irreparable harm to the plaintiff was balanced by the irreparable harm that defendants would suffer if plaintiff was allowed to "beat them to market" with the disputed concept for a television show. This case does not present the same "zero sum" dilemma. The district court was therefore within its discretion in concluding that because alternative promotion methods were available to S & H, S & H would not suffer harm equal to or greater than the substantial threat of irreparable harm to Allied.

Finally, S & H claims that the public interest would be disserved by granting a preliminary injunction in favor of Allied. S & H relies primarily on the fact that Allied's postcard mailers "drew the ire of the Texas Attorney General's office" because of their similarity to notices used by the United States Postal Service and by United Parcel Service. It is not clear, however, how S & H hopes to benefit from this argument since it seeks to use postcards with a substantially similar format. We cannot conclude that the district court abused its discretion in holding that the public interest would be served by "preserving the integrity of the copyright laws." The district court's conclusion properly reflects the policy judgment implicit in copyright and unfair competition laws that the public's interest in competition may be outweighed by the public's interest in preserving rights in intellectual property. We note, however, that the public interest calculus would be different if Allied has failed to carry its burden of persuasion regarding its likelihood of success on the merits.

originality and copyrightability of the material and compliance with "statutory formalities." *Apple Barrel Productions*, 730 F.2d at 387. "Copying" is generally established by proving that the defendant had access to the copyrighted material and that there is a "substantial similarity" between the two works. *Id.* at 387 n. 3; *Ferguson*, 584 F.2d at 113.

■ In the instant case, the district court found that Allied's certificate of registration established a prima facie case of "ownership" of the postcard. The district court also found that Allied had established a "substantial likelihood" that S & H "copied" the postcard. The district court noted that "S & H stipulated that it received at least one version of Allied's postcard as early as August 1986" and found that "[t]he record also indicates that each of the defendants had access to and was specifically aware of Allied's postcard promotions prior to the alleged conception" of the S & H postcard. The district court further found that the two post cards were "substantially—indeed, strikingly—similar." The district court concluded that Allied had therefore demonstrated a substantial likelihood that it would prevail on the merits of the copyright infringement claim.

S & H, however, raised numerous defenses to the copyright claim, none of which was addressed by the district court. Most significantly,[2] S & H contends that Allied was not the original author of the post card mailer and that a substantial number of Allied's postcards—over one million—were mailed without any copyright notice affixed to them.[3]

S & H maintains that the postcard mailer at issue here was first developed, but not copyrighted, by Burke & Co. and was disseminated to two million consumers at least six months before the Allied mailers were first distributed. S & H argues that the Allied postcard is strikingly similar to the Burke card, compelling a finding that Allied copied the Burke card and is therefore entitled to no copyright in the cards. *Donald v. Zack Meyer's T.V. Sales & Service*, 426 F.2d 1027, 1029 (5th Cir.1970). S & H asserts that Allied's copyright in the card is therefore unenforceable against S & H.

Allied, on the other hand, claims that the pre-existing Burke postcard was not substantially similar to its postcard and that although Burke did subsequently mail a postcard substantially similar to the Allied card, the second Burke card was a copy of Allied's card. Although the district court made no finding on this point, Allied asserts that the facts necessary to resolve this dispute are contained in the evidence submitted to the district court and that we should therefore assume that the district court implicitly resolved this issue in their favor.

While we appreciate Allied's candor in its characterization of the district court's opinion, we must, for the reasons explained below, decline to judge the merits of this appeal based on such "implied" findings of fact by the district court.

S & H maintains that even if Allied is the original author of the postcard, Allied lost any protection it may have had in the postcard mailer as a result of its failure to affix copyright notice to a significant number of its cards. S & H observes correctly that if a work has passed into the public domain as a result of failure to provide notice of copyright, it may freely be copied. Thus, if S & H's defense is valid, Allied could not prevail on its copyright infringement claim.

Section 405(a) of the Copyright Act provides that omission of copyright notice will not invalidate a copyright if one of three conditions is met:

(1) the notice has been omitted from no more than a relatively small number of

---

**2.** S & H also claims that Allied's copyright is invalid because (1) the samples filed with the copyright office did not bear a copyright notice, and (2) Allied misrepresented to the copyright office that it had not previously copyrighted the same materials. S & H further claims that even if the copyright is valid, it is unenforceable because of Allied's unclean hands.

**3.** S & H also claims that Allied mailed an additional 8 million copies of its postcards with defective notice.

copies or phonorecords distributed to the public; or

(2) registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered; or

(3) the notice has been omitted in violation of an express requirement in writing that, as a condition of the copyright owner's authorization of the public distribution of copies or phonorecords, they bear the prescribed notice.

17 U.S.C. § 405(a); *Canfield v. Ponchatoula Times*, 759 F.2d 493, 497–98 (5th Cir. 1985).

 Allied argues that although the district court made no specific findings regarding the omission of copyright notice, it "could not have ... overlooked" the issue which was discussed at length in the parties' briefs to the district court. Allied maintains that because the district court found that there was a substantial likelihood that Allied would prevail on its copyright infringement claim, we may "assume" that the district court "impliedly" found that Allied had made reasonable efforts to cure the omission of copyright notice and that the copyright was therefore valid. What constitutes a "reasonable effort" under section 405(a)(2) varies from case to case, *Canfield*, 759 F.2d at 499, and

4. Allied and S & H disagree as to the accuracy of Stevan Hammond's testimony regarding the last date on which Allied sent out the mailers which lacked copyright notice. The parties also disagree as to whether the "substantially similar" Burke postcard was disseminated to consumers before the Allied postcard. The district court issued an order on April 4, 1988 announcing that pursuant to Rules 43(e) and 78, the request for a preliminary injunction would be decided on the basis of affidavits and depositions and without a hearing "unless the court determines that a hearing is necessary to resolve conflicts in the evidence or to make credibility determinations." S & H does not argue on appeal that the district court erred in refusing to conduct an evidentiary hearing and we do not so hold. We simply direct the district court to consider whether resolution of these issues would require an evidentiary hearing under the

requires factual determinations that we will not undertake on appeal.

There is substantial disagreement between the parties on both of these issues, including some matters which may require a determination of the credibility of witnesses whose deposition testimony was submitted to the district court.[4] We therefore conclude that these questions must be resolved in the first instance by the district court. Absent a specific determination by the district court, we cannot know whether Allied has actually carried its burden of persuading the trial court that it is likely to prevail on the merits of its copyright claim. We therefore remand this question to the district court for further findings of fact and conclusions of law.[5]

B. Trade Dress Infringement Claim

 Allied's second claim is that S & H's postcard mailers infringed upon the trade dress of Allied's mailers in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). "Trade dress" refers to the image and overall appearance of a product. *Blue Bell Bio–Medical*, 864 F.2d at 1256; *Falcon Rice Mill*, 725 F.2d at 337 n. 1. The Lanham Act prohibits a party from "passing off" its goods or services as those of a competitor by employing a substantially similar trade dress which is likely to confuse consumers as to the source of the product. *Blue Bell Bio–Medical*, 864 F.2d at 1256; *Sno–Wizard Mfg., Inc. v. Eisemann Products Co.*, 791 F.2d 423,

standard set forth in *Commerce Park*, 729 F.2d at 341.

5. Allied relies on our decision in *Plains Cotton Co-op v. Goodpasture Computer Service, inc.*, 807 F.2d 1256 (5th Cir.1987), for the proposition that we should accept the district court's word that it has reviewed the briefs and all the evidence and may assume that the district court implicitly made the findings of fact necessary to support its ultimate decision. While we noted that the district court opinion in *Plains Cotton* was "lean," 807 F.2d at 1260, the district court opinion in this case lacks *any* indication that the court considered the arguments presented by S & H. Unlike the district court opinion in *Plains Cotton*, the opinion in this case does not provide a sufficient basis for appellate review.

425–26 (5th Cir.1986); *Chevron,* 659 F.2d at 703.

We have held that a court must follow a two-step analysis in determining whether there has been an infringement of trade dress under the Lanham Act. First, the court must determine whether the trade dress is protected under the Act. This first inquiry encompasses three issues: (1) distinctiveness, (2) "secondary meaning," and (3) "functionality." *Blue Bell Bio–Medical,* 864 F.2d at 1256; *Sno–Wizard,* 791 F.2d at 425; *Sicilia Di. R. Biebow & Co. v. Cox,* 732 F.2d 417, 425 (5th Cir.1984).

 A trade dress is functional and therefore not entitled to protection if it consists of a "design or feature superior or optimal in terms of engineering, economy of manufacture, or accomodation of utilitarian function or performance." *Sicilia,* 732 F.2d at 429. A design that "merely assists in a product or configuration's utility" is not functional and may be protected. *Id.* The "ultimate inquiry" in determining the functionality of a trade dress is whether protection of the configuration will "hinder competition or impinge upon the rights of others to compete effectively in the sale of goods." *Id.*

 If a trade dress is not functional, it is entitled to protection if it is distinctive or has acquired a "secondary meaning" such that the consuming public associates the trade dress with a particular source.[6] Proof of secondary meaning is not required if a trade dress is "sufficiently distinctive of itself to identify the producer," *Sicilia,* 732 F.2d at 426, as when the dress consists of fanciful or arbitrarily-selected features which do not serve simply to "describe the product or [to] assist in its effective packaging." *Chevron,* 659 F.2d at 702.

 If a court determines that the trade dress is protected—because it is non-functional and is either distinctive or has acquired secondary meaning, the court must then determine whether the trade dress has been infringed. Infringement is

shown by demonstrating that the substantial similarity in trade dress is likely to confuse consumers. *Blue Bell Bio–Medical,* 864 F.2d at 1256; *Sno–Wizard,* 791 F.2d at 428; *Chevron,* 659 F.2d at 703; *Sun–Fun Products, Inc. v. Suntan Research & Development, Inc.,* 656 F.2d 186, 192 (5th Cir.1981). Although evidence of actual confusion on the part of consumers "is patently the best evidence of likelihood of confusion," *Chevron,* 659 F.2d at 704, it is not necessary to demonstrate actual confusion in order to prevail on a trade dress infringement claim. *Sun–Fun Products,* 656 F.2d at 191; *Sicilia,* 732 F.2d at 433. Rather, a likelihood of confusion may be determined by considering a number of factors or "digits" of confusion, including:

> similarity of products, identity of retail outlets and purchasers, identity of advertising media, type (i.e., strength) of trademark or trade dress, defendant's intent, similarlity [sic] of design, and actual confusion. In addition, it is often appropriate to consider the degree of care exercised by purchasers: confusion is more likely, for example, if the products in question are 'impulse' items or are inexpensive.

*Blue Bell Bio–Medical,* 864 F.2d at 1260; *Sno–Wizard,* 791 F.2d at 428; *Sun–Fun Products,* 656 F.2d at 189.

In the instant case, the district court found that the mailers used by S & H were "virtually identical" to those used by Allied, that the use of the mailers had been profitable to S & H, and that Allied and S & H were likely to mail their promotions to the same group of consumers. The district court further found that the substantial similarity between the two mailers had resulted in "[a]ctual confusion on the part of consumers."

 The district court was correct in noting that likelihood of confusion is central to determining whether a trade dress has been infringed, and we agree

---

6. In *Sicilia,* we noted that a configuration or design that is sufficiently distinctive cannot also be functional in a legal sense. 732 F.2d at 425. In *Sno–Wizard,* however, we clarified that the converse is not true—a finding of non-functionality does not dictate a finding that the dress *is* distinctive. A product may be both non-functional and non-distinctive. 791 F.2d 427 n. 4.

that there is sufficient evidence in this case to conclude that there is a substantial likelihood that Allied would prevail on this point.[7] However, the district court failed to make the threshold determination that Allied's trade dress was protected under the Act. A plaintiff's trade dress must rise to the level of trademark protectability before likelihood of confusion becomes relevant. *Sicilia*, 732 F.2d at 425. S & H has asserted vigorously that Allied's mailer is not distinctive; that the mailer had not acquired secondary meaning to consumers; and that the configuration of the mailer is functional such that Allied may not prevent its competitors from employing a similar format. Although the district court states in the "background" section of its opinion that Allied's postcards are "distinctive," it does not expressly address this issue in its legal analysis of the trade dress infringement claim, nor does the court address the questions of functionality or secondary meaning. It is therefore unclear whether the district court would conclude that the postcard format was sufficiently distinctive, in a legal sense, to make the latter two inquiries unnecessary.

Allied again argues that because the district court found that there was a substantial likelihood that Allied would prevail on the merits of the Lanham Act claim, this court may "presume" that the district court determined that its trade dress was protected.

We must again decline Allied's invitation to evaluate the district court's decision on the basis of "presumed" findings of fact and conclusions of law. Whatever we may think of the strength of S & H's arguments, we do not think that questions such as distinctiveness, functionality, or secondary meaning should be addressed in the first instance by an appellate court. *See Inverness*, 819 F.2d at 51 (district court decision granting a preliminary injunction in trade dress infringement action was inadequate under Rule 52(a) where the district court found a likelihood of confusion between the litigants' products but failed to address secondary meaning and functionality); *see also Central Gulf Steamship Corp. v. International Paper Co.*, 477 F.2d 907, 908 (5th Cir.1973) (remanding case to district court for formal findings of fact and conclusions of law in support of decision to grant preliminary injunction).

We agree that the "appropriate procedure" in this situation is to remand the case to the district court for an explanation of its decision. *Inverness*, 819 F.2d at 51. Because we cannot say at this point in time that the district court committed reversible error, we will leave the preliminary injunction in place on the condition that the district court issue a supplementary opinion making the findings of fact and conclusions of law required by this opinion not later than two months after the issuance of this court's mandate. The district court's opinion should address S & H's defenses to both the copyright and trade dress claims as well as S & H's claim of laches. We do not address these questions in more detail here because they have been thoroughly briefed by the parties.

7. S & H asserts that the evidence of actual confusion—consisting of less than 10 examples—is manifestly inadequate in light of the millions of postcard mailers that have been disseminated by both parties. As we note above, however, a party need not prove actual confusion in order to prevail in a trade dress infringement action. Although the district court refers to the evidence of actual confusion, it is clear from the opinion that the district court did not rely on that evidence alone and recognized that a showing of likelihood of confusion is sufficient. Moreover, although the district court opinion does not explicitly apply the "digits of confusion" test, its findings address three of the factors—similarity of design, identity of purchasers, and actual confusion—we have deemed to be relevant and would be sufficient to establish a likelihood of confusion under our standard. "Intent" is the only relevant factor on which the district court did not make a finding. We have held that failure to make a specific finding with respect to one factor is not reversible error where the ultimate finding of likelihood of confusion is not clearly erroneous. *Blue Bell Bio–Medical*, 864 F.2d at 1259.

We find no clear error in the district court's ultimate finding of likelihood of confusion and therefore do not disturb the district court's conclusion on this point. We agree that if Allied's trade dress *is* protected, there is a substantial likelihood that Allied would prevail on the merits of its infringement claim.

Upon issuance of the district court's opinion, the appellant should supplement the record. It will not be necessary to file a new notice of appeal. The Clerk of this court will then establish an abbreviated briefing period for supplemental briefs addressed to the issues raised by the district court's supplemental opinion.[8]

As a final point, we note that we have previously declined to fault a district court for issuing a preliminary injunction "despite the existence of a plausible defense." *Dallas Cowboys Cheerleaders,* 600 F.2d at 1188. In that case, however, the defendant had made only a passing reference to a potentially strong defense that the allegedly infringing poster was a parody of the plaintiffs' copyrighted original. We emphasized, moreover, that the district court had expressed willingness to hold the trial on the merits within two weeks' time.

In contrast, the defendants in this case presented several well-developed defenses below and the trial on the merits was originally scheduled to begin more than a year after the preliminary injunction was issued. It has now been continued until June of 1990—nearly two years after the entry of the original injunction. While we do not construe Rule 52(a) to require a district court in granting or denying a preliminary injunction to address every nuance of the parties' arguments with the same detail as it would following a full trial on the merits, the district court must at least make clear that it has considered plausible defenses which *are* fully briefed and argued by defendants. While a preliminary injunction may be appropriate even in the face of potentially significant defenses, it is frequently desirable in such cases to expedite the trial on the merits. *See* 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2950, at 484 (1973 & Supp.1988).

### III.

For the foregoing reasons, we REMAND the case to the district court for further findings of fact and conclusions of law consistent with this opinion. The preliminary injunction will remain in place, subject to the conditions set forth above. Each party shall bear its own costs.

---

8. The parties are instructed to file with the district court copies of their briefs heretofore filed on appeal to this court.