**Charles V. ABATE, Jr., et al.,**
**Plaintiffs–Appellants,**

v.

**SOUTHERN PACIFIC TRANSPORTA-**
**TION COMPANY, et al.,**
**Defendants–Appellees.**

No. 90–3629
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 8, 1991.

Christopher B. Little, Lawrence M. Mann, Alper & Mann, Washington, D.C., Louis L. Robein, Jr., Gardner, Robein & Urann, Metairie, La., for plaintiffs-appellants.

Lowell V. Sturgill, Jr., Richard A. Olderman, Leonard Schaitman, Justice Dept., Civ. Div., Appellate Staff, for Federal R.R. Admin.

Raymond J. Salassi, Jr., H. Mark Adams, Richard Schroeder, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Southern Pacific Transp. Co.

Michael R. O'Keefe, III, John M. Girault, Benjamin Richard Slater, Jr., Monroe & Lemann, Julie Ellen Rodriguq, Oschner Medical Institute In House Counsel, New Orleans, La., for Alton Oschner Medical Foundation, Inc.

Paul McConnell Batiza, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., for Logan & Nelson Clinic, et al.

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellants, six railroad employees and two of their unions, sought to assert an implied private right of action under the Federal Railroad Safety Act (FRSA), 45 U.S.C. §§ 421–445, and the implementing regulations governing federally-mandated drug-testing programs. Appellants sought both injunctive relief and compensatory and punitive damages. The district court ruled that the FRSA did not afford appellants a private right of action to enforce regulations promulgated under the statute and declined to issue a preliminary injunction. We affirm.

## I.

Pursuant to regulations issued by the Federal Railroad Administration (FRA), Southern Pacific began random urinalysis testing of its railroad employees. Certain of those employees in Louisiana, including the individual appellants, were tested by the defendant medical clinics and doctors. Appellants do not question the validity of some form of drug testing. Rather, they contend that the collection and handling of samples were not conducted in accordance with the FRA's drug-testing rules and thus subjected them to unjustified humiliation and embarrassment and violated their legitimate expectations of privacy. They brought suit in the United States District Court for the Eastern District of Louisiana, seeking to enjoin further testing in violation of the rules and to recover damages for past violations. Appellants obtained a temporary restraining order that prohibited

Southern Pacific from conducting random urinalysis testing, but the district court later denied a request for a preliminary injunction. Appellants seek review of that interlocutory order.

## II.

Essentially, appellants charge that Southern Pacific and other defendants working at its direction violated certain privacy-protecting provisions of 49 C.F.R. Part 40—Procedures for Transportation Workplace Drug Testing Programs.[1] From their vantage point, it is unfortunate that neither the FRSA nor the drug-testing rules explicitly authorize them to seek injunctive or monetary relief for such violations. That is, neither the statute nor its regulations explicitly grant a private right of action to enforce their provisions. Appellants ask us to infer one. Guided by standards set down by the Supreme Court, we decline to do so.

Before stating and applying these standards, we dispose of a preliminary matter. Appellants' brief devotes much space to showing that the FRA's drug-testing rules are intended to protect railroad employees and, specifically, their privacy interests. On this basis, appellants ask us to recognize a private right of action to enforce those regulations against railroad employers. We need not wrestle with this issue. The regulations, as opposed to the statute, evince a positive intent to *deny* private remedies for violations of the drug-testing rules or any other rules: "Nothing in this part ... [c]reates a private right of action on the part of any person for enforcement of the provisions of this part or for damages resulting from noncompliance with this part." 49 C.F.R. § 219.17(b). Appellants must look to the FRSA itself as the source for their hoped-for private right of action.

The Supreme Court recently discussed the analysis for determining whether to infer a private right of action:

---

**1.** Part 40 applies to appellants pursuant to Subparts G and H of Part 219. *See* 49 C.F.R. § 219.601(a) ("Each railroad shall submit for FRA approval a random testing program meeting the requirements of this subpart [G]."); *id.* § 219.701(a) ("[T]he conduct of urine drug test-

ing under subparts D, F, and G of this part shall be governed by this subpart [H] and [Part 40]."); *id.* § 219.703(a) ("Urine samples shall be collected and handled as required in 49 CFR Part 40 and this section.").

As guides to discerning [Congress'] intent, we have relied on the four factors set out in *Cort v. Ash*, 422 U.S. 66, 78 [95 S.Ct. 2080, 2087, 45 L.Ed.2d 26] (1975).... The intent of Congress remains the ultimate issue, however, and "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."

*Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988) (quoting *Northwest Airlines v. Transport Workers Union*, 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1979)). We thus examine the language and structure of the FRSA.

### A. Statutory Language

The drug-testing rules were promulgated by the FRA under the authority of 45 U.S.C. §§ 431, 437, and 438. Section 431(a)(1) is a general grant of rulemaking authority: The FRA shall "prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety...."[2] Section 437(a) grants authority to enforce the rules prescribed: "The [FRA] is further authorized to issue orders directing compliance with this subchapter." Section 438(b) requires the rules to be coupled with potential monetary penalties: "The [FRA] shall include in, or make applicable to, any railroad safety rule, regulation, order, or standard issued under this subchapter a civil penalty for violation thereof...."

This language does not suggest any congressional intent to create a private right of action on the part of railroad employees. If we ask, "is the plaintiff one of the class for whose *especial* benefit the statute was enacted?" *Cort v. Ash*, 422 U.S. at 78, 95

S.Ct. at 2088, we must answer in the negative. Rather than use language that "expressly identifies the class Congress intended to benefit," *Cannon v. University of Chicago*, 441 U.S. 677, 690, 99 S.Ct. 1946, 1954, 60 L.Ed.2d 560 (1979), here Congress "instead has framed the statute simply as a general prohibition or a command to a federal agency," *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 772, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981). The statute creates no rights in favor of individuals—the quoted provisions do not even mention, let alone "expressly identify," railroad employees. Rather, the FRSA imposes duties on a federal agency and grants the agency the power to fulfill those duties. It provides that the FRA "shall prescribe ...," "is further authorized ...," and "shall include...."[3]

It is true that railroad employees are *a* class that stands to gain *some* benefit from the regulations and penalties promulgated under these provisions. This fact alone, however, cannot suffice to gain them a private right of action when the statute focuses on them only diffusely. Our court held as much in a decision refusing to create such a right under the National Flood Insurance Program. We reviewed two prior cases refusing to create private rights of action: "In both cases, the statutory duty was imposed directly on federal agencies. Thus, we held that the benefits flowing to the plaintiffs were derived indirectly and not as a result of any private right of action conferred upon their class." *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 158 (5th Cir. Unit A Aug. 1981) (citing *United States v. Capeletti Bros.*, 621 F.2d 1309, 1314 (5th Cir.1980); *Rogers v. Frito Lay, Inc.*, 611 F.2d 1074, 1079–80 (5th Cir.), *cert. denied*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980)). In any event, it is evident that Congress must have meant to benefit more than railroad employees when it declared "the pur-

---

2. The FRSA grants this authority to the Secretary of Transportation, who in turn has delegated the authority to the FRA. *See* 49 C.F.R. § 1.49(m).

3. Contrast this duty-creating language with right-creating language of the statute in *Cannon*, which read: "No person in the United States shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), *quoted in Cannon*, 441 U.S. at 681–82, 99 S.Ct. at 1949–50.

pose of [the FRSA] is to promote safety in all areas of railroad operations and to reduce railroad-related accidents, and to reduce death and injuries to persons and to reduce damage to property." 45 U.S.C. § 421.

## B. Statutory Structure

In conjunction with creating the duty and authority to issue railroad safety regulations, the FRSA also concerns itself with judicial enforcement of those regulations. Section 438(c) provides in part:

> Any person violating any rule, regulation, order, or standard ... shall be assessed by the [FRA] the civil penalty applicable to the standard violated.... Such civil penalty is to be recovered in a suit or suits to be brought by the Attorney General on behalf of the United States in [a] district court of the United States....

If a direct order, rather than recovery of a penalty, is deemed more efficacious to enforce compliance with the rules, section 439(a) allows the FRA to seek judicial assistance: "The United States District Court shall, at the request of the [FRA] and upon petition by the Attorney General on behalf of the United States, ... have jurisdiction ... to restrain violations of this subchapter or to enforce rules, regulations, orders, or standards established under this subchapter...." Section 437(a) provides for a similar mechanism to enforce the FRA's subpoenas, orders, and directives. Finally, even though states may play a role in enforcing railroad safety regulations, section 435(a) declares that the FRA "shall retain the exclusive authority to assess and compromise penalties and ... to request injunctive relief for the violation of rules, regulations, orders, and standards prescribed by the [FRA]."

The enforcement scheme, like the rulemaking authority, does not support an inference of congressional intent to create a private right of action for railroad employees. If we inquire, "is it consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff?" *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2088, we must again answer in the negative. Except for the limited authority granted certain state agencies, regulatory enforcement is the exclusive prerogative of the FRA acting in conjunction with the Attorney General. Our court has declared that "a pervasive remedial scheme provided by Congress is an indication that there was no intent to provide an additional private remedy." *Till*, 653 F.2d at 160. The structure of the FRSA indicates that Congress intended to give federal agencies, not private persons, the sole power of enforcement. The limited exception to this rule allows enforcement by state agencies meeting stringent certification requirements— and only then when the FRA has failed to act. *See* 45 U.S.C. §§ 435 and 436.

In considering the structure of the FRSA, it is also noteworthy that Congress has explicitly granted a private right of action to railroad employees in another part of the statute. Section 432(e) allows an employee "who may be exposed to imminent physical injury ... because of the [FRA's] failure, without any reasonable basis," to issue an emergency safety order to sue the FRA to compel it to issue such an order. As we have noted previously, "[t]he Supreme Court [has] refused to imply a private cause of action partly because other sections of the same act expressly provided for private remedies." *Till*, 653 F.2d at 160 (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572, 99 S.Ct. 2479, 2487, 61 L.Ed.2d 82 (1979)). Finally, we consider it probative that railway labor organizations lobbied, *unsuccessfully*, to include in the 1988 amendments to the FRSA the very same private right of action that appellants now seek from this court.[4] In short, the structure of the FRSA no more supports inferring a private cause of action than does its language.

## III.

Having held that the drug-testing rules did not afford appellants a private right of

---

**4.** *See Rail Safety: Hearings Before the Subcomm. on Surface Transportation of the Senate Comm. on Commerce, Science, and Transportation,* 100 Cong., 1st Sess. 206, 207 (1987) (statement of J.R. Snyder, Railway Labor Executives' Association) (proposing provision that would permit railroad employees tested for alcohol and drugs in violation of federal regulations to

action, the district court denied a preliminary injunction and dissolved the temporary restraining order. We have recently stated that "[a] preliminary injunction is an extraordinary remedy that should not be granted unless the movant has demonstrated, by a clear showing: (1) a substantial likelihood of prevailing on the merits...." *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir.1990). Furthermore, "[t]o determine the likelihood of success on the merits, we look to the standards provided by the substantive law." *Id.* As we have just construed it, the substantive law—the FRSA and the FRA's drug-testing rules—affords appellants no basis for relief against any of the defendants. Appellants therefore have no likelihood of prevailing on the merits. The district court did not err or abuse its discretion in denying a preliminary injunction.

The judgment of the district court is AFFIRMED.

sue their employers for compensatory and punitive damages plus attorney's fees). The FRA and the railroad industry both specifically opposed this provision. *See id.* at 96, 113–14 (letter from FRA to Sen. Hollings); *id.* at 191, 203 (statement of William H. Dempsey, President, Association of American Railroads). To paraphrase the Supreme Court: "That the views of the [FRA] and [Mr. Dempsey] prevailed ... provide[s] strong evidence against inferring a federal cause of action." *Thompson v. Thompson*, 484 U.S. 174, 185, 108 S.Ct. 513, 519, 98 L.Ed.2d 512 (1988). The 1988 amendments to the FRSA were enacted as the Rail Safety Improvement Act of 1988, Pub.L. No. 100–342, 102 Stat. 624.