United States Court of Appeals,

Fifth Circuit.

No. 91-9535.

Charles V. ABATE, Jr., et al., Plaintiffs-Appellants,

v.

SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al., Defendants-Appellees.

June 15, 1993.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, WISDOM, and WIENER, Circuit Judges.

WISDOM, Circuit Judge:

Seven railroad employees[1] instituted this action alleging their employer violated their constitutional rights guaranteed by the fourth amendment by the manner in which the employer implemented its mandatory random drug testing program. Because the railroad was acting as an agent for the federal government in testing them, the plaintiffs seek damages under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*.[2] The district court found no constitutional violation and granted summary judgment in favor of the railroad. We hold that the railroad is not liable under *Bivens* for the alleged misconduct. Therefore, we affirm the district court's grant of summary judgment without reaching the constitutionality of the testing procedure.

I.

In January 1990, the Federal Railroad Administration ("FRA") required all Class I[3] railroads to begin random urinalysis testing of their employees subject to the Hours of Service Act.[4] The regulations require that random drug testing be conducted under the procedures prescribed by the

---

[1]The railroad workers are joined by their unions, Brotherhood of Locomotive Engineers, Local 531 and United Transportation Union, Local 1836, in this action.

[2]403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

[3]Southern Pacific is a Class I railroad.

[4]45 U.S.C. § 61 *et seq.* *See* 49 C.F.R. § 219 *et seq.*

Department of Transportation.[5]  These procedures provide for observation of the urine collection process only when testing is conducted for cause.[6]

In preparation for and in response to the required testing, Southern Pacific began training its supervisory personnel on the proper procedures for testing.  Southern Pacific also proposed its own plan for testing which was approved by the FRA in 1989.  At all times, Southern Pacific maintained a policy of no observation during urine collection.  It went to great lengths to ensure that the testing would be conducted in a reasonable and constitutionally acceptable manner.  In conjunction with several meetings with its supervisory personnel and the testing facilities' staff members, it formally issued a protocol for testing to the clinics and hospitals that were selected to perform the tests.  Both its FRA approved plan as well as its collection procedures manual stated that the workers were not to be observed while providing their urine samples.

On March 3, 1990, Southern Pacific conducted the first random test at an Avondale, Louisiana based job assignment.  The railroad's computers randomly selected plaintiffs Raymond G. Lipps, Francis Castille, Jr., and James E. Glaviana to be tested.  Southern Pacific instructed the trainmaster on duty to escort the men to the Westbank Surgical Clinic for testing.  On the way to the clinic, the trainmaster told the men that they would be observed during the urine collection.  The nurse assigned to the testing confirmed this fact in front of the trainmaster.  At this time, the doctor on duty entered a room adjoining the collection room and observed, via hidden camera, Lipps and Castille urinating.  No one observed Glaviana giving his sample.  When the trainmaster discovered this fact, he declared a "no test" for Glaviana.

The following week, the railroad selected a second crew for testing.  A different trainmaster

---

[5]49 C.F.R. § 40 *et seq.,* 49 C.F.R. § 219.703(a).  These procedures closely parallel the drug testing procedures for government employees issued by the Department of Health and Human Services, 53 Fed.Reg. 47002, which were described and approved by the Supreme Court in *Nat'l Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).  In *Von Raab,* the Court relied, at least in part, on the presence of the regulations which prohibited observation, in concluding the random testing constituted a reasonable search under the fourth amendment.  *Id.* at 672, n. 2, 109 S.Ct. at 1394, n. 2.  Thus, *Von Raab* does not directly control the outcome in the instant case.

[6]49 C.F.R. § 40.25.

escorted plaintiffs Michael L. Ledet and James H. Landry to the Westbank Surgical Clinic. Again, the nurse told the men, in the presence of the trainmaster, that the doctor would observe them. Ledet was unable to urinate, allegedly due to his knowledge that he was being observed. After returning to the rail yard, Ledet requested a copy of the regulations. He then informed the trainmaster that according to the regulations, he (Ledet) was not to be observed. The trainmaster retorted, warning Ledet that he would be suspended for nine months if he refused to take the test. The following day, Ledet was taken to the clinic where he eventually gave a urine sample while being observed.

Finally, on April 24, Southern Pacific selected a third crew for testing. This time the men were taken to the Ochsner Medical Center for testing. No one observed the men while they were urinating. Rather, plaintiffs Charles V. Abate, Lipps, and Francis K. Bourg[7] allege other mishandling. The nurse took the men to a small room with a curtain serving as the fourth wall. The rooms were not equipped with a toilet or sink. According to Lipps, when he entered the room he requested a larger container in which to complete his void and the nurse refused. Lipps maintains that he soiled himself as a result of being unable to stop urinating once the small collection vessel was filled. Abate complains that the nurse stood within earshot of his stall while he was attempting to urinate.

In response to this alleged mistreatment, the plaintiffs filed the instant suit. They requested damages and a preliminary injunction prohibiting further testing. The district court denied the injunction and this Court affirmed.[8] The district court then considered the parties' motions for summary judgment.[9] The court granted summary judgment in favor of Southern Pacific and dismissed the plaintiffs' claims with prejudice. The court based its decision on its finding that the alleged misconduct did not rise to a constitutional level. Although the court based its holding on this finding, it went on to state that under *Bivens,* the railroad could not be held liable under a respondeat superior theory. The court also noted that the plaintiffs' claims sounded in negligence and that

[7]Mr. Bourg voluntarily dismissed his claims.

[8]*Abate v. Southern Pacific Transportation Co.* ("*Abate* I"), 928 F.2d 167 (5th Cir.1991).

[9]These motions were filed before the Fifth Circuit's decision in *Abate* I, but were delayed while that appeal was pending. When *Abate* I was decided, the district court took up the motions for consideration.

negligent conduct did not give rise to a *Bivens* claim. The court also dismissed the plaintiffs' state law claims on the grounds that the Federal Employers' Liability Act ("FELA") preempted them. Finally, the court denied the plaintiffs' request for leave to add FELA claims.

The plaintiffs appeal all parts of this decision except for the court's denial of their request to add FELA claims. Without reaching the portions of the court's decision regarding the constitutionality of the testing, we affirm its grant of summary judgment in favor of Southern Pacific.[10]

## II.

*Bivens* affords the victim of unconstitutional conduct by a federal actor or agent a direct remedy under the Constitution. To recover damages under *Bivens,* the injured party must show the existence of a valid constitutional violation.[11] Further, as the district court noted, respondeat superior liability is not available in a *Bivens* action. In *Dean v. Gladney,*[12] the plaintiffs sued the city for the allegedly unconstitutional conduct of several of its police officers. The Court held that it could not impose liability on a county or city based on a theory of respondeat superior under *Bivens.*[13] In so holding, the Court affirmed the district court's dismissal of the plaintiffs' *Bivens* claims against the City.[14] The Court explained:

> In *Bivens* the Supreme Court permitted individuals whose fourth amendment rights had been violated by federal agents to bring a claim for monetary damages against those agents directly

[10]Although the district court's grant of summary judgment was based on its finding that the plaintiffs' had failed to establish a constitutional violation, we affirm on other grounds. *See Degan v. Ford Motor Co.,* 869 F.2d 889, 892 (5th Cir.1989); *Church of Scientology of California v. Cazares,* 638 F.2d 1272, 1281 (5th Cir.1981).

[11]*Garcia v. United States,* 666 F.2d 960, 966 (5th Cir.1982), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982).

[12]621 F.2d 1331 (5th Cir.1980), *cert. denied,* 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981).

[13]*Id.* at 1335. (Citing decisions from six other circuits as support.)

[14]*Bivens* is the federal counterpart of § 1983. In effect, it extends the protections afforded by § 1983 to parties injured by federal actors not liable under § 1983. The facts in *Dean* indicate, somewhat ambiguously, that no federal actors were involved in the case. Therefore, the *Dean* plaintiff may have been in error in seeking to advance a *Bivens* claim against non-federal entities and individuals. In any event, the *Dean* Court's respondeat superior analysis is valid.

under the fourth amendment. Respondeat superior liability was not at issue in *Bivens;* consequently, the majority opinion did not broach that subject. Nothing in *Bivens,* as we read it, supports the imposition of respondeat superior liability. In fact, as the district court below noted, both the concurring and dissenting opinions in *Bivens* clearly indicate that the doctrine of sovereign immunity *precluded* the plaintiffs in *Bivens* from recovering against the government for the tortious conduct of its agents.... Because *Bivens* imposed liability only on those actors who were culpable, "to impose liability on a municipality under the theory of respondeat superior would be "fundamentally inconsistent with the import of *Bivens* ' ". "Since the *sine qua non* of *Bivens* is the imposition of liability on those actors who can meaningfully be termed "culpable', it is inappropriate to permit a recovery of damages from those who, by any standard, are innocent of wrongdoing."[15]

In addition to this reasoning, the Court also looked to the law relating to analogous 42 U.S.C. § 1983 claims. It is well settled that there can be no respondeat superior liability in a § 1983 claim.[16] In *Monell,* the Supreme Court held that a municipality cannot be held liable solely because it employs a tortfeasor.[17] To hold a city or state government liable for its employees' constitutionally tortious conduct under § 1983, the plaintiff must show that the conduct was the result of the city's policy or accepted custom.[18]

The *Dean* Court held that "it would be incongruous to hold that the doctrine of respondeat superior can be invoked against a municipal corporation in [a] ... *Bivens*-type action when the doctrine has no application in an action under 42 U.S.C. § 1983".[19] The Court reasoned that *Bivens* was "in essence" the federal counterpart to § 1983, which applies to state officials acting under color of state law.[20]

The facts in *Dean* are not identical with those in the instant case. However, its holding survives these differences. In this case, Southern Pacific acted as an agent for the Federal government, whereas in *Dean* the defendant was a municipal corporation. This difference does not

---

[15]*Id.* at 1336-37 (citations omitted).

[16]*Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

[17]*Id.*

[18]*Monell,* 436 U.S. at 690-91, 98 S.Ct. at 2035-36.

[19]*Dean,* 621 F.2d at 1336 (quoting *Jones v. City of Memphis,* 586 F.2d 622, 625 (6th Cir.1978), *cert. denied,* 440 U.S. 914, 99 S.Ct. 1230, 59 L.Ed.2d 464 (1979)).

[20]*Id.*

convince us to reject the *Dean* holding. Southern Pacific, just like the federal government itself, is not liable "solely because it employs a tortfeasor".[21] The plaintiff must show that Southern Pacific caused the tortious conduct by its accepted custom or policy. The plaintiffs in the instant case do not contest that Southern Pacific's official policy prohibited observation of urine collection. Further, they offer no evidence linking the trainmasters' digression from this policy to their employer in any way. Thus, the plaintiffs have not carried their burden.

The plaintiffs dispute the application of the *Dean* holding to this case but they offer no authority for this position. The crux of their argument is their contention that Southern Pacific was directly responsible for the allegedly unconstitutional conduct. In *Skinner v. Railway Labor Executives' Ass'n,*[22] the Supreme Court held that drug testing of railroad workers involved in accidents or suspected of drug use was a reasonable search under the fourth amendment. In so holding, the Court stated that the railroad "may not divest itself or otherwise compromise by contract the authority [so] conferred".[23] The plaintiffs argue that this holding underscores the duty imposed on the railroad by federal regulation to properly implement and supervise the testing.[24] Consequently, they argue that Southern Pacific is directly responsible for their alleged injuries. They contend that Southern Pacific acted with deliberate indifference in training its employees. Consequently, they argue, Southern Pacific is liable under *City of Canton, Ohio v. Harris.*[25]

This argument fails. Even were we to find an affirmative duty beyond that imposed by the fourth amendment, the railroad is not culpable. This was Southern Pacific's first attempt at implementing its testing plan in the Avondale area. As already noted, Southern Pacific went to great

---

[21]*Monell,* 436 U.S. at 691, 98 S.Ct. at 2036.

[22]489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

[23]*Id.* at 615, 109 S.Ct. at 1411-12.

[24]49 C.F.R. § 219.601 (1989). Under the regulations, the railroad is responsible for developing and implementing the drug testing program.

[25]489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In *Canton,* the Court held that a municipality may be held liable under 42 U.S.C. § 1983 for its failure to train its employees when such failure is the result of the municipality's deliberate indifference to constitutional rights.

lengths to fulfill its "duty" to implement an acceptable plan. The Plaintiffs do not dispute that Southern Pacific supplied extensive training to both the medical facilities' and their own supervisory personnel. Further, Southern Pacific rectified the trainmasters' misunderstanding immediately upon discovering what had occurred.[26] Overall, Southern Pacific acted diligently and in good faith in implementing the federally required drug testing plan. The trainmasters' unfortunate digression from their employer's policy was not the result of any action or even inaction on Southern Pacific's part.

The plaintiffs' claims under *Bivens* consequently must fail. *Bivens* entitles the plaintiffs to a direct action against culpable parties. Because we find the railroad free from any culpability for the actions of its employees in this case, we need not reach the issue of whether the trainmasters' alleged misconduct constitutes an unreasonable search under the fourth amendment. We decline to grant the plaintiffs' implied request for strict liability for carrying out the federally required drug testing program.

As a final matter, we affirm the district court's ruling that the Federal Employers' Liability Act ("FELA") preempts the plaintiffs' state law claims.[27]

III.

The district court's grant of summary judgment is AFFIRMED.

---

[26]Southern Pacific first learned of the complained of incidents when the plaintiffs filed this action. Southern Pacific immediately rectified the problem.

[27]The plaintiffs did not specify their Louisiana law claims in their complaint. However in their brief supporting their Motion for Summary Judgment they discuss the claims in detail. These claims include: (1) alleged violations of the Louisiana Constitution for breach of their right to privacy; (2) tortious invasion of privacy; (3) alleged negligence violations under La.Civ.Code arts. 2315 and 2316; and (4) alleged infliction of emotional distress by outrageous conduct. *See Janelle v. Seaboard Coastline R.R. Co.,* 524 F.2d 1259, 1261 (5th Cir.1975).